1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                      SOUTHERN DISTRICT OF CALIFORNIA
10
11   TERRY CAMPBELL,                    )      Civil No. 06cv1573-L(AJB)
                                        )
12                   Petitioner,        )
                                        )      **ORDER ADOPTING REPORT AND**
13   v.                                 )      **RECOMMENDATION AND**
                                        )      **DENYING PETITION**
14   ROBERT HERNANDEZ, Warden, *et al.*,)
                                        )
15                   Respondents.       )
                                        )
16   _____)

17          Petitioner Terry Campbell, a state prisoner proceeding *pro se*, filed a Petition for Writ of

18   Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition").  Petitioner claims his due process

19   rights were violated because he was denied parole.  The case was referred to United States

20   Magistrate Judge Anthony J. Battaglia for a report and recommendation pursuant to 28 U.S.C.

21   § 636(b)(1)(B) and Civil Local Rule 72.1(d).  The Magistrate Judge issued a Report and

22   Recommendation, recommending the Petition be denied.  Petitioner timely objected.

23   Respondent did not respond.  For the reasons which follow, the Report and Recommendation is

24   **ADOPTED**, and the Petition is **DENIED**.

25          In reviewing a magistrate judge's report and recommendation, the district court "shall

26   make a *de novo* determination of those portions of the report . . . to which objection is made,"

27   and "may accept, reject, or modify, in whole or in part, the findings or recommendations made

28   by the magistrate judge."  28 U.S.C. § 636(b)(1).  Under this statute, "the district judge must

review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise*." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*) (emphasis in original); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz. 2003) (applying *Reyna-Tapia* to habeas review).  Petitioner objects to the recommendation to deny the Petition and to many of the Magistrate Judge's findings in support of that recommendation.  Upon performing the requisite *de novo* review, the court concurs with Judge Battaglia's recommendation to deny the Petition.

In 1966, Petitioner received an indeterminate sentence of life in prison after execution-style murder of a gas station attendant.[1]  Petitioner also robbed the gas station of approximately $70.  In 1967, during his incarceration for the 1966 murder, Petitioner pled guilty to first degree murder of another inmate with a zip gun.  He received a concurrent indeterminate life sentence for this crime.  While still incarcerated in 1973, Petitioner pled guilty to first degree murder for beating another inmate to death with a baseball bat.  He received his third concurrent indeterminate life sentence at that time.  He did not challenge any of the convictions or sentences he received.

Petitioner's minimum eligible parole date was September 17, 1980 and he appeared before the California Board of Prison Terms ("BPT," now known as the Board of Parole Hearings ("BPH")) several times since then.  (Resp't Lodgment ("Lodgment") Ex. 8 at 3, 1.) The pending Petition challenges the denial of parole at the June 23, 2004 hearing.  At that time, Petitioner had been incarcerated continuously since 1966.  (*Id. passim.*)  He was 59 years old and had support of his adoptive parents and his adult children.  (*Id*. at 39-40, 45-47.)  He had completed two bachelor's degrees, certain vocational certifications, and several self-help programs in prison.  (*Id. passim.*)  He received several letters of support, including from correctional personnel.  (*Id*. at 45-50, 59-66.)  The most recent psychological report concluded Petitioner presented "a very low risk for violence ."  (*Id*. at 73; *see also id*. at 66-75.)  He had a

---

[1]    Petitioner does not object to the description of the factual and procedural background in the Report and Recommendation.  The background is therefore summarized from the Report and Recommendation.

1  good disciplinary record since 1994, but significant and numerous violations before then. (*Id.*

2  *passim.*)  In reaching the conclusion to deny parole, the BPH found, in pertinent part:

3      [¶]  [T]he Panel reviewed all information received from the public and relied on
       the following circumstances in concluding that you're not yet suitable for parole
4      and would pose an unreasonable risk of danger to society or a threat to public
       safety if released from prison. . . . [T]he commitment offense was the first thing
5      that we looked at . . .. [T]he offense in 1966, the murder of Kermit Pritchard was
       certainly callous.  This was a young man who had been at the gas station.  The
6      offense was very dispassionate. . . . He was apparently placed on his knees before
       he was shot in the back of the head, and the motive for the crime was a robbery,
7      and as the inmate stated today, the ability to get away.  And he lost his life over 70
       some dollars in cash simply going to work.  The second offense was at San
8      Quentin, it was the killing of Ronald Roberts who was shot by a zip gun inside the
       cell.  The prisoner has told us that Roberts threatened his life and that he was in
9      fear and felt it was his only choice.  But then following that crime[,] in 1973[,] Mr.
       Campbell was involved in the killing of another inmate at CMC in San Luis
10     Obispo and that was Mr. Risenhoover who was beaten with a baseball bat and then
       apparently stabbed by Mr. Campbell and his crime partner, Mr. Johnson.  So in
11     fact the initial murder of Mr. Pritchard at the gas station did not deter the prison
       [*sic*] from committing other criminal offenses while incarcerated.

12
       [¶]  The prisoner has an escalating pattern of criminal conduct, certainly a history
13     of unstable and tumultuous relationships with others, and has failed previous
       grants of probation and parole and can't be counted upon to avoid criminality.  He
14     failed to profit from society's previous attempts to correct his criminality.  Such
       attempts included juvenile probation, juvenile camp, CYA, county jail, adult
15     probation, and parole, as well as incarceration in several institutions.

16     [¶]  The prisoner has programmed well.  He's upgraded both educationally and
       vocationally and has participated in self-help.
17
       [¶]  He has received serious 115 disciplinary reports and as recently as 1994 tested
18     dirty [for methamphetamine], also in 1991 there was possession of US currency
       and narcotics trafficking, and in 1990 threatening to staff . . . [T]his was 10 years
19     ago, but in the big picture, when you consider how long you've been incarcerated,
       that's still pretty recent bad behavior under the circumstances.
20
       [¶]  This prisoner has realistic parole plans in that he has an offer of residence and
21     support from his daughter.  He also has an offer of residence in Oregon with a
       friend and has[,]he stated[,] two job offers. . . .
22
       [¶]  The Hearing Panel notes that in response to 3042 Notices, the District
23     Attorney of both Los Angeles and Marin County have had representatives appear
       today and a letter was sent by the District Attorney's Office in San Luis Obispo
24     [*sic*] all opposing the finding of suitability at this time.  The Los Angeles County
       Sheriff's Department also responded with a letter opposing the finding of
25     suitability at this time.

26     [¶]  The Panel makes the following finding:  That considering the offenses and the
       number of the offenses and the length of the prisoner's incarceration, having
27     serious disciplinary violations in the last 10 years, specifically the last one in 1994
       for testing dirty, that the prisoner's gains are recent and he must demonstrate an
28     ability to maintain the gains over an extended period of time.  Nevertheless, we do

3

want to commend you, Mr. Campbell, for all of the upgrading that you've done, for completing the x-ray and the computer [certificates], for certainly upgrading substantially educationally, and for being disciplinary free since the last 115 in 1994.  However, these positive aspects of his behavior do not currently outweigh the factors of unsuitability.  In a separate decision, the Panel finds that it's not reasonable to expect that parole would be granted at a hearing during the following two years.

[¶]  The specific reasons for this finding are as follows:  The offense was committed in an especially cruel manner, . . . specifically . . . the offense against Mr. Pritchard who was simply working and was ordered into the restroom and made the kneel on the floor and then shot in the back of the head for 70 dollars.  Multiple victims were attacked by the inmate in separate incidents and all three were killed.  And the offenses and especially the first offense [*sic*] was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering, and the motive for that particular . . . offense was just extremely trivial in relation to the offense.  The prisoner has an extensive history of criminality and misconduct including arrests for burglary, grand theft auto, carrying a concealed weapon among many others.  The prisoner has a history of unstable and tumultuous relationships with others and as recently as 1994 committed a serious disciplinary violation by testing dirty for drugs while incarcerated.

[¶]  The Panel recommends that the prisoner remain disciplinary free and continue to participate in self-help when available and just continue with the work that you're [*sic*] doing.  And we also are going to order a new psych [*sic*] report for your next Board hearing and we're going to specifically ask . . . the psychologist to address some of the issues that were raised today regarding whether . . . there are issues of sociopathy . . . as well as some of the other questions that were raised by the District Attorney. . . .

(Lodgment Ex. 8 at 98-102.)

Petitioner subsequently filed for habeas relief in state court, challenging the denial of parole.  He argued (1) the BPH did not follow its own regulations when it denied parole; (2) the decision was arbitrary and capricious in that it was not supported by any evidence; and (3) the BPH relied on the unchanging factors of Petitioner's offenses and thereby changed his sentence from life with possibility of parole to life without the possibility of parole.  (*See* Lodgment Ex. 9.)  The petition was denied in the Superior Court, which issued a reasoned opinion.  (*See* Lodgment Ex. 10.)  The state court held the BPH decision was supported by some evidence and that it was not based solely on unchanging factors.  (*Id.*)  The finding that the BPH followed its regulations is implicit in the decision.  (*Id.*)  Petitions to the California Court of Appeal and

/ / / / /

/ / / / /

/ / / / /

1   California Supreme Court were summarily denied.[2]  Petitioner then filed for habeas relief in

2   federal court.

3          Under the Antiterrorism and Effective Death Penalty Act of 1996, a state prisoner's

4   habeas corpus petition in this court "may be granted only if he demonstrates that the state court

5   decision denying relief was 'contrary to, or involved an unreasonable application of, clearly

6   established Federal law, as determined by the Supreme Court of the United States.'"  *Irons v.*

7   *Carey*, 505 F.3d 846, 850 (9th Cir. 2007); 28 U.S.C. § 2254(d)(1).

8          "The Supreme Court has held that '[t]here is no constitutional or inherent right of a

9   convicted person to be conditionally released before the expiration of a valid sentence.'

10  However, if a state statute 'uses mandatory language (shall) to create a presumption that parole

11  release will be granted when the designated findings are made,' the statute creates a liberty

12  interest in parole."  *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006),

13  quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 12 (1979) & *Bd.*

14  *of Pardons v. Allen*, 482 U.S. 369, 377-78 (1987).  "Under the 'clearly established' framework

15  of *Greenholtz* and *Allen*, . . . California's parole scheme gives rise to a cognizable liberty interest

16  in release on parole."  *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).

17         "At the time that [Petitioner's] state habeas petition was before the state courts, the

18  Supreme Court had clearly established that a parole board's decision deprives a prisoner of due

19  process with respect to [his constitutionally protected liberty interest in the receipt of a parole

20  release date], if the board's decision is not supported by some evidence in the record or is

21  otherwise arbitrary."  *Irons*, 505 F.3d at 851 (internal quotation marks and citations omitted); *see*

22  *also id.* at 850.  "When we assess whether a state parole board's suitability determination was

23  supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and

24  regulations governing parole suitability determinations in the relevant state.  Accordingly, . . .

25  we must look to California law to determine the findings that are necessary to deem a prisoner

26

27         [2]      Because the last reasoned opinion in state court was issued by the Superior Court,
28  the court "looks through" the state supreme court and appellate court decisions to the trial court
    decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

1    unsuitable for parole, and then must review the record in order to determine whether the state

2    court decision holding that these findings were supported by 'some evidence' in [Petitioner's]

3    case constituted an unreasonable application of the 'some evidence' principle articulated in

4    [*Superintendent v. Hill*, 472 U.S. 445, 454 (1985)].  *Id*. at 851.

5           Petitioner argues that the findings necessary to deem him unsuitable for parole are stated

6    in Section 2316, Title 15 California Code of Regulations, and not section 2402 which the BPH

7    allegedly applied in his case.  (*See* R&R at 7.)  The state court held the applicable findings are

8    stated in section 2281, and that the BPH followed this standard.  (*See* Lodgment Ex. 10.)  The

9    Magistrate Judge found the unsuitability criteria of sections 2281 and 2316 were sufficiently

10   similar for the difference to be inconsequential, "because the reasons articulated by the Board in

11   the decision to deny Petitioner parole satisfy suitability standards set forth in each of these

12   sections." (R&R at 8.)  Petitioner objects to this finding.  (*See* Objections at 1-3.)[3]

13          Section 2316 sets forth the unsuitability criteria as follows:

14   In determining whether an ISL prisoner[4] is unsuitable for parole the hearing panel
     shall consider factors which affect the severity of the offense and the risk of danger
15   to society if the prisoner were released.  Examples of factors indicating the
     prisoner is unsuitable for parole include:
16
     (a)  A history of violent attacks.
17
     (b)  A history of forcible sexual attacks on others.
18
     (c)  A persistent pattern of criminal behavior and a failure to demonstrate evidence
19   of a substantial change for the better.

20   / / / / /

21

22          [3]     Petitioner argues that "[c]learly established U.S. Supreme Court law states that
     parole boards must follow their own regulations . . .." (Objections at 2.)  He relies on *United
23   States v. Nixon*, 418 U.S. 683 (1974).  *Nixon* is inapposite.  The court was not confined by the
     deferential habeas review, and it decided issues of justiciability of a dispute between a special
24   prosecutor and the President of the United States, and the scope of the executive privilege in a
     criminal prosecution.
25

26          [4]     The term "ISL Prisoner" in the California Code of Regulations is defined as "[a]
     person sentenced to prison for a crime committed on or before June 30, 1977, who would have
27   been sentenced pursuant to Penal Code section 1170 if he had committed the crime on or after
     July 1, 1977."  Cal. Code Regs., tit. 15, § 2000(b)(1).  "ISL" is the "Indeterminate Sentence
28   Law," which "refers to sections of the Penal Code . . . operative prior to July 1, 1977."  *Id*. §
     2000(b)(59).

(d)  The presence of psychiatric or psychological condition related to the prisoner's criminality which creates a high likelihood that new serious crimes will be committed if released.

The BPH considered these factors, specifically the severity of the offense, history of violent attacks, persistent pattern of criminal behavior, failure to demonstrate evidence of a substantial change for the better, and the presence of a psychiatric or psychological condition. (Lodgment Ex. 8 at 98-102, quoted *supra*.)  The board's findings are supported by the record of Petitioner's three murders, two of which were committed in prison, pattern of criminal behavior before and after the 1966 commitment offense, criminal conduct in prison as late as the 1990s, including narcotics trafficking, and concerns regarding sociopathy expressed in an earlier psychological evaluation and argued by the Los Angeles County Deputy District Attorney at the hearing (*id*. at 86-87).  The record also supports the board's conclusion that Petitioner's change for the better was too recent to outweigh decades of criminality.  The board's consideration of additional factors was not prohibited by section 2316, which provides a non-exclusive list of unsuitability factors.

Similarly, section 2281(c) provides an non-exclusive list of unsuitability factors:

The following circumstances each tend to indicate unsuitability for release.  These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.  Circumstances tending to indicate unsuitability include:

(1)  Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A)  Multiple victims were attacked, injured or killed in the same or separate incidents.

(B)  The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C)  The victim was abused, defiled or mutilated during or after the offense.

(D)  The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E)  The motive for the crime is inexplicable or very trivial in relation to the offense.

(2)  Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

06cv1573

1

(3)  Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

2

3

(4)  Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated in inflict unusual pain or fear upon the victim.

4

(5)  Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

5

6

(6)  Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

7        Although the unsuitability factors listed in section 2281 are more specific and numerous

8   than the factors in section 2316, they include and elaborate on the factors listed in section 2316.

9   The factors considered by the board are included in both sections.  Whether the applicable

10  standard is section 2316, as argued by Petitioner, or section 2281, as applied by the state court,

11  the BPH considered the relevant factors and its findings are supported by evidence in the record.

12        The court does not address the issue whether the state court erred when it held that the

13  applicable standard is set forth in section 2281.  This issue is outside federal habeas review.

14  "[F]ederal habeas corpus relief does not lie for errors of state law. . . . [I]t is not the province of

15  a federal habeas court to reexamine state-court determinations of state-law questions."  *Estelle v.*

16  *McGuire*, 502 U.S. 62, 68 (1991).  "In conducting habeas review, a federal court is limited to

17  deciding whether the [state court proceedings] violated [a state prisoner's rights under] the

18  Constitution, laws, or treaties of the United States."  *Id*. at 67.

19        Petitioner also objects to the Report and Recommendation on the grounds that the reasons

20  cited by the BPH were unreliable to support the finding that Petitioner posed an unreasonable

21  risk of danger, because the board relied on the offenses themselves, Petitioner's history of

22  unstable relationship with his mother (*see* Lodgment Ex. 8 at 30-33), and his disciplinary history

23  in prison, all of which occurred in the past and are immutable.  (Objections at 5-6.)  Petitioner

24  argues that based on his psychological evaluation, which concluded he presented "a very low

25  risk for violence" (Lodgment Ex. 8 at 73; *see also id*. at 66-75), the board's finding was not

26  supported by credible evidence and had no basis in fact.  (Objections at 6-7.)  For these reasons,

27  Petitioner claims, he was deprived of a fair and impartial hearing and the state court's

28  / / / / /

1   application of the "some evidence" standard was erroneous and objectively unreasonable.  (*Id*. at

2   7-8.)

3        Petitioner did not deny at the parole hearing, and does not deny in this court, any of the

4   facts the board considered in making the parole determination.  He disagrees, however, with the

5   significance attributed by the board to some facts as opposed to others in determining whether he

6   posed an unreasonable risk of danger.

7        The "some evidence" standard requires only a "modicum of evidence."  *Hill*, 472 U.S. at

8   455.  It "is met if there was some evidence from which the conclusion of the administrative

9   tribunal could be deduced."  *Id*. (internal quotation marks, ellipsis and citation omitted).

10  "Ascertaining whether this standard is satisfied does not require examination of the entire record,

11  independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the

12  relevant question is whether there is any evidence in the record that could support the conclusion

13  reached by the . . . board."  *Id*. at 455-56.  This standard "does not require evidence that logically

14  precludes any conclusion but the one reached by the . . . board."  *Id*. at 477.

15       As discussed above, the BPH considered the factors set forth by California law as

16  relevant to the determination of a prisoner's risk of danger to society.  The most recent

17  psychological evaluation was only one of the factors for consideration.  Neither section 2281 nor

18  section 2316 instructs the board to base its determination solely on the psychological evaluation

19  or that the evaluation should be given greater weight than any other factor.  The BPH considered

20  Petitioner's offenses, prison disciplinary record and his unstable relationship with his mother.

21  (*See* Lodgment Ex. 8 at 98-102, quoted *supra*.)  In addition, it considered Petitioner's more

22  recent record, including his educational and vocational advancement, involvement with various

23  self-help programs, and the good disciplinary record for the preceding ten years.  (*See id*.)  The

24  record supports the board's conclusion that Petitioner's good behavior and his advancements

25  were too recent to outweigh the unsuitability factors.  Ten years of good disciplinary record were

26  preceded  by decades of criminal behavior, including criminal behavior preceding the 1966

27  / / / / /

28  commitment offense and criminal behavior from 1967 to 1994, during incarceration for the

1   commitment offense.

2        To the extent Petitioner's argument is intended to show that the parole proceedings

3   "resulted in a decision that was based on an unreasonable determination of the facts in light of

4   the evidence presented," 28 U.S.C. § 2254(d)(2), he must prove by clear and convincing

5   evidence that the board's finding that he posed an unreasonable risk of danger was not only

6   erroneous but objectively unreasonable.  *See* 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 366

7   F.3d 992, 999 (9th Cir. 2004).  For the reasons discussed above, Petitioner had not made the

8   requisite showing.

9        Petitioner further objects to the Report and Recommendation on the grounds that the BPH

10  "ignor[ed] the law altogether" and that its decision was arbitrary and capricious, devoid of a

11  "rational nexus between the factors cited and petitioner's alleged current dangerousness."

12  (Objections at 8.)  For the reasons discussed above, this objection is rejected.

13       Petitioner also objects to the Report and Recommendation to the extent it is based on the

14  premise that the BPH can deny parole based on the commitment offense alone.  Because, as

15  noted by the state court (*see* Lodgment Ex. 10) and discussed above, the BPH did not base its

16  decision on the commitment offense alone, the court need not reach this issue to decide the

17  pending Petition.

18       Last, Petitioner objects on the grounds that "the 'some evidence' standard is clearly

19  flawed and inadequate to protect [Petitioner's] liberty interest and due process rights."

20  (Objections at 3-4.)  In addition, Petitioner questions the applicability of the "some evidence"

21  standard to parole, as opposed to prison disciplinary hearings.  (*Id*. at 4.)  Petitioner does not cite

22  any legal authority in support of these arguments.  Under 28 U.S.C. § 2254(d)(1), the role of the

23  federal court is to determine whether the state court decision was contrary to or involved an

24  unreasonable application of clearly established federal law as determined by the United States

25  Supreme Court.  This refers to "the governing legal principle or principles set forth by the

26  Supreme Court as of the time of the relevant state-court decision.  *Fowler v. Sacramento County*

27  / / / / /

28  *Sheriff's Dept.*, 421 F.3d 1027, 1034 (9th Cir. 2005).  Accordingly, effecting a change in federal

constitutional law, as urged by Petitioner, is outside the scope of federal habeas review.

For the foregoing reasons, the state court decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly, the Report and Recommendation is **ADOPTED**, Petitioner's objections are overruled, and the Petition is **DENIED**.

**IT IS SO ORDERED**.

DATED:  February 11, 2008

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. ANTHONY J. BATTAGLA
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

06cv1573